IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| Robert Peoples, #27600, | ) | C/A NO.  8:07-1203-CMC-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| South Carolina Department of Corrections, | ) | |
| Warden George Hagan; Director Jon | ) | |
| Ozmint; Major Bernard Walker; IGC Ken | ) | |
| Long; Captain Dubose; Lt. Isiah Cann; | ) | |
| Cpl. Porter McKnight; Ofc. Cory Johnson; | ) | |
| Ofc. Latasha Grant; Ofc. Eric Williams; | ) | |
| Lt. Darrell Tyler; Nurse Sylvia Rawls; | ) | |
| The Rapid Response Team; Et Al | ) | |
| All In & Ofc. Capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff's *pro se* complaint, filed in this court pursuant to

42 U.S.C. § 1983.  Plaintiff alleges that he was subjected to the use of excessive force, in violation

of the Eighth Amendment, during an incident at Allendale Correctional Institution (ACI) on April

22, 2004.  Defendants have filed a motion for summary judgment, to which Plaintiff has responded.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this

matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pre-trial

proceedings and a Report and Recommendation ("Report").  On May 13, 2008, the Magistrate Judge

issued a Report recommending that Defendants' motion for summary judgment be granted and this

matter dismissed with prejudice.  The Magistrate Judge advised Plaintiff of the procedures and

requirements for filing objections to the Report and the serious consequences if he failed to do so.

1

Plaintiff filed objections to the Report on May 21, 2008. On July 23, 2008, Plaintiff renewed his motion to compel which had previously been denied by Magistrate Judge Hendricks on December 14, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After reviewing the record of this matter, the applicable law, the Report of the Magistrate Judge, and Plaintiff's objections, the court declines to adopt the Report and **denies** summary judgment to Defendant McKnight. The summary judgment motion of Defendants Hagan, Long, Ozmint, Dubose, Johnson, Williams, and Tyler is **granted**. Defendants South Carolina Department of Corrections (SCDC), the Rapid Response Team (RRT), and Defendants Walker, Cann, Grant, and Rawls are dismissed from this matter without prejudice. The reasons for these decisions are set forth below. This matter shall be set for trial during the term of court beginning January 15, 2009.

### I. Defendants to be Dismissed

### A. Defendants SCDC and the RRT Not "Persons" Amendable to Suit Under § 1983

As an initial matter, the court notes that Defendants South Carolina Department of Corrections (SCDC) and the Rapid Response Team (RRT) are not "persons" amenable to suit under § 1983. As to SCDC, it is well-settled that an agency of the state is not a "person" within the

2

meaning of § 1983, and thus is not a proper defendant. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Defendant SCDC is dismissed from this action.

The RRT is not a "person" subject to suit under § 1983. Its composition is fluid, and suits for alleged civil rights violations are more appropriately filed against individuals, which Plaintiff has done. Therefore, Defendant RRT is dismissed from this matter.[1]

**B. Defendants Not Served**

Several of the individual defendants have not been served. Defendants Walker, Cann, Grant, and Rawls have never been served with the amended complaint in this matter. Plaintiff previously moved this court for "special service," Dkt. # 56 (filed Jan. 2, 2008), seeking assistance from the court in obtaining the current addresses of these particular Defendants. However, Plaintiff's *pro se* status does not relieve him of this responsibility, nor does this court act as counsel for plaintiffs to ensure the proper service of parties to a suit.

This issue is complicated by the haphazard inclusion of all "Defendants" in the Answer and the Motion for Summary Judgment, even though defense counsel noted an appearance "on behalf of all Defendants [who] have been properly served at this time." Ans. at 1 n.1 (Dkt. # 29, filed Aug. 21, 2007). There is no evidence that counsel had the authority of the parties who had not been served to answer on their behalf. Therefore, this court's summary judgment analysis is applicable to the properly-served Defendants. Plaintiff's motion for "special service" is **denied** and pursuant to Federal Rule of Civil Procedure 4(m), Defendants Walker, Cann, Grant, and Rawls are **dismissed from this action without prejudice**.

---

[1]The RRT was also not properly served. However, even if it had been properly served, the court would dismiss this defendant for the reason noted.

3

### C. Official and Individual Capacity

The individually-named Defendants are employees of SCDC which is an "arm of the state." Therefore, to the extent sued in this "official capacity," Defendants are immune from suit. As such, they are treated as "arms of the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Plaintiff, however, also sues each Defendant in his individual capacity. See Am. Compl. at 1 (Dkt. # 11, filed June 25, 2007). To the extent sued in their individual capacities, Defendants are not immune from suit.

## II. Summary Judgment

### A. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R.

Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

In this Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein

5

are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  Plaintiff has filed a verified Amended Complaint.  *See* Dkt. #11.

**B.  Facts**

Taken in the light most favorable to Plaintiff, the facts are as follows.  On April 22, 2004, Plaintiff, an inmate of the SCDC, was housed on the B-Wing of the Special Management Unit (SMU) at Allendale Correctional Institution (ACI).  When delivered bagged dinners on the afternoon of April 22, several inmates, including Plaintiff, began to protest that they had not received the correct amount of food.  Some of the inmates began kicking cell doors and yelling in an attempt to gain the attention of B-Wing's supervisory correctional personnel.  Plaintiff attests that he was "one of the complaining inmates" but that he was not kicking his cell door.  Aff. of Robert Peoples (hereinafter "Pla's Aff.") at ¶¶ 2, 3 (Dkt. # 59-2, filed Jan. 7, 2008).

Correctional personnel directed the inmates to cease their disruptive behavior.  When the kicking and yelling did not stop, the Rapid Response Team (RRT) was summoned to B-Wing.[2]  The members of the RRT, non-RRT correctional personnel, and Warden George Hagan (Hagan), assembled in a "sallyport," or anteroom, just outside of B-Wing to discuss their next course of action.  Plaintiff avers that once the inmates learned that the RRT was present, they stopped kicking and yelling.  Am. Compl. at 3 & Aff. of Robert Peoples (hereinafter "Pla's Aff. #2") at 1 (Dkt. # 60, filed Jan. 7, 2008).

Plaintiff attests that even though the disturbance had ceased prior to the entry of the RRT on the wing, the RRT proceeded to enter B-Wing wearing gas masks.  Plaintiff maintains that despite the cessation of the ruckus, the RRT proceeded to the cells of various individuals whom the

---

[2]There is no information in the record about the specific duties or composition of the RRT.

6

RRT had been told were involved in the disturbance,[3] and members of the RRT (specifically Defendants Cann and McKnight) deployed bursts of gas onto various inmates through the "food flap" of their cell doors. Am. Compl. at 4.

Plaintiff attests that he was the last inmate gassed. When the RRT arrived at his cell, he was neither kicking nor yelling (he avers that he was sitting on his bed, reading), received no verbal commands from any members of the RRT, and yet was gassed "with two long bursts of gas" by Defendant Cpl. Porter McKnight (McKnight) through his cell's "food flap."

Plaintiff contends that the gas was so strong that it was necessary for him to wet his bed linens, wrap himself in those linens, and then crawl under his bed. Am. Compl. at 11.[4] Plaintiff maintains that after the incident, Nurse Rawls arrived at B-Wing, but departed without examining him (and other inmates) because the gas was too strong. Plaintiff asserts that he was not seen by medical personnel until two weeks later, and that paperwork indicating that he was seen the day of the incident was fabricated. Plaintiff also maintains that he was not given the opportunity to shower, nor was he allowed to clean his cell for two weeks, and that when he came into contact with items inside his cell during that time period, he suffered residual effects of the gassing.

There is no specific evidence of the type of chemical munition used. It is unknown whether the substance used was pepper spray, some other form of mace, tear gas, or some other chemical

---

[3] Plaintiff maintains that the RRT was given a list of names and cell numbers of inmates who were believed to have participated in the disturbance.

[4]Plaintiff alleges that on the day of the incident, the air ventilation "malfunctioned" in his cell, that the gas was extremely strong, and that the gas did not dissipate for some time either in B-Wing or in his cell. In Defendants' Responses to Requests for Admissions, Defendants deny that the air ventilation in Plaintiff's cell was not working properly on the day of the incident. Responses to Discovery Requests at 3 (Dkt. #35, filed Sept. 22, 2007).

substance.  Hagan refers to the substance only as "ISPRA" in his response to Plaintiff's Step 1 Grievance (attached at p.7 of Am. Compl.) (hereinafter "Grievance Response").[5]  Defendants alternately refer to the substance in their motion for summary judgment as either "gas" or "mace." Mem. in Supp. Mot. Summ. Jgm. at 3, 9 (Dkt. #51-2, filed Dec. 17, 2007).  In the Grievance Response, Hagan noted "[t]he use of ISPRA" during the incident, but did not explain if that is a specific type of gas or merely a generic reference to a crowd control gas.  Plaintiff maintains that the type of gas that was used is only supposed to be used in open areas for riot control.  Defendants do not directly refute this allegation.  Plaintiff asserts that this improper use of gas increased the level of pain and suffering he experienced during the incident.

Hagan was present during the incident.  He has taken two slightly inconsistent positions regarding what occurred.  In an affidavit filed in a parallel state court action, Hagan attested that while there "may have been some inconsistencies in the individual responses . . . regarding the chain of command," the use of force was reasonable to control the disturbance.  Aff. of Geoge W. Hagan at ¶9 (Attach. to Mem. in Supp. Summ. J.) (Dkt. #51-5, filed Dec. 19, 2007).  However, as noted above, in the Grievance Response, Hagan responded that "Your complaint has merit. . . .  The use of ISPRA within the confines of SMU was inappropriate.  This type incident should not happen again."  *See* Grievance Response.

Plaintiff avers that he suffered "several injuries such as severe chest pain, aggravated headaches, loss of vision, increase[ed] high blood pressure, . . . and emotional anguish . . . ."  Pla's

---

[5]The court assumes that "ISPRA" is an acronym for the company Israeli Products Research Company, Limited, which manufactures "nonlethal and tear gas devices for anti terror riot control and personal protection."  Information located at http://www.ispraltd.com/profile.htm (last visited August 6, 2008).

Aff. at 5.

Defendants take the position that Plaintiff and other offending inmates were not compliant with commands of prison officials to stop kicking their cell doors and yelling. Defendants claim that moments before Plaintiff was sprayed with the gas, he was continuing his disruptive behavior and was commanded to stop. Defendants maintain that "one short burst" of gas was deployed into Plaintiff's cell. After the gas was deployed, Defendants contend that a nurse entered B-Wing and examined Plaintiff, finding no treatable injuries.

Defendants have submitted no affidavits of the individuals involved except Hagan, relying on his affidavit which was filed in a parallel state court action. Plaintiff has not objected to the consideration of this previously-filed affidavit. Therefore, the court considers Hagan's affidavit and its attachments as if they had been properly submitted to this court. *See* Fed. R. Civ. P. 56(e) ("If a paper or part of a paper is referred to in an affidavit, *a sworn or certified copy* must be attached to or served with the affidavit.") (emphasis added).

### III. Report of the Magistrate Judge

**A. Timeliness of Complaint.** As an initial matter, the Magistrate Judge found Plaintiff's complaint barred by the applicable statute of limitations because the incident occurred on April 22, 2004, and the complaint was not filed in this court until April 30, 2007.[6] This court disagrees, as Plaintiff's claims were tolled while he exhausted administrative remedies.

Section 1983 does not contain an express statute of limitations. Therefore, federal courts

---

[6]Because Plaintiff benefits from the rule of *Houston v. Lack*, 487 U.S. 266 (1988), his complaint is deemed filed as of the date it was given to prison officials for mailing. The envelope accompanying Plaintiff's complaint indicates that prison officials processed his complaint on April 30, 2007. The complaint was received by the Clerk of Court on May 1, 2007. It is unclear to this court why the complaint was docketed as having been filed on May 3, 2007. *See* Dkt. #1.

considering §1983 claims adopt the forum state's statute of limitations for personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In South Carolina, the general or residual statute of limitations for personal injury claims is codified at S.C. Code Ann. § 15-3-530(5), which provides that the statute of limitations is three years for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law . . . ." This statute of limitations has been held to be the applicable statute of limitations for § 1983 claims. *See Huffman v. Tuten*, 446 F. Supp. 2d 455 (D.S.C. 2006); *Ward v. Parole, Probation, and Pardon Bd.*, 2007 WL 3377163 (D.S.C. 2007) (unpublished); *Rowe v. Hill*, 2007 WL 1232140 (D.S.C. 2007) (unpublished).

Because "the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application," federal courts must "also borrow [ ] the state's tolling rules-including any equitable tolling doctrines." *Smith v. City of Chicago Heights*, 951 F.2d 834, 839-40 (7th Cir. 1992). *See also Wade v. Danek Medical, Inc.*, 182 F.3d 281, 289 (4th Cir. 1999) (applying same principle in diversity case, finding that "in any case in which a state statute of limitations applies-whether because it is 'borrowed' in a federal question action or because it applies under *Erie* in a diversity action-the state's accompanying rule regarding equitable tolling should also apply.").

In this case, the relevant tolling statute states,

When the commencement of an action shall be stayed by injunction or statutory prohibition the time of the continuance of the injunction or prohibition shall not be part of the time limited for the commencement of the action.

S.C. Code Ann. § 15-3-100. It therefore appears that a federal court applying South Carolina law must toll the statute of limitations if a "statutory prohibition" exists which prevents a plaintiff's

cause of action.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust available administrative remedies before filing a § 1983 action concerning conditions of his confinement. 42 U.S.C. § 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended §1997e so that it now provides,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* § 1997e(a). Accordingly, before Plaintiff could proceed with his § 1983 claim in this court, he had to properly exhaust his available administrative remedies. A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Woodford v. Ngo*, 548 U.S. 81 (2006).

It does not appear that the Fourth Circuit has yet ruled on the precise relationship between § 1997e and the South Carolina tolling statute. However, other circuits have concluded that federal courts should toll state statutes of limitations while inmates exhaust their administrative remedies under § 1997e. *See*, *e.g.*, *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999).

Plaintiff could not bring suit in this court until he had exhausted his administrative remedies, which did not happen until May 18, 2005.[7] Because tolling applies to the period during which Plaintiff was exhausting his administrative remedies, this court finds that the complaint was timely

---

[7]The Step 2 Grievance Response is dated May 18, 2005, but was not served upon Plaintiff until May 26, 2005. Attached at p. 21 of Am. Compl.

filed on April 30, 2007.

**B. Res Judicata – Affirmative Defense.** The Report recommends that this matter be dismissed as to all claims on *res judicata* grounds. This recommendation was *sua sponte* as to Plaintiff's federal cause of action, as Defendants only argued for dismissal of Plaintiff's state court claims on this ground. *See* Mem. in Supp. M. Summ. J. at 6 (Dkt. # 51-2, filed Dec. 19, 2007).[8]

*Res judicata* is an affirmative defense that must be pleaded or it is waived. *Arizona v. California*, 530 U.S. 392, 410 (2000) (principles of preclusion "rank res judicata an affirmative defense ordinarily lost if not timely raised."). *See also Crowe v. Cherokee Wonderland, Inc.*, 379 F.2d 51 (4th Cir. 1967) (defense of res judicata is an affirmative defense that must be pleaded affirmatively and is waived where it is not raised in trial court); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 958 F. Supp. 1087, 1102 (W.D.N.C. 1997) (same), *overruled on other grounds*, 155 F.3d 331 (4th Cir. 1998). The *sua sponte* invocation of this defense is, therefore, disfavored. *See, e.g., Carbonell v. Louisiana Dept. of Health & Human Resources*, 772 F.2d 185, 189 (5th Cir. 1985) (observing that a district court may raise claim preclusion *sua sponte* only in cases where the previous action was litigated in the same district or in cases "in which all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata"). A court may properly *sua sponte* raise a waivable affirmative defense only if the defense is clear from the face of the complaint.

---

[8]The doctrine of *res judicata* embodies two distinct preclusion concepts: (1) claim preclusion; and (2) issue preclusion. *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Claim preclusion refers to the preclusive effect of a judgment in foreclosing litigation of matters which were or should have been raised in an earlier suit, while issue preclusion refers to the effect of a judgment in precluding the relitigation of specific issues actually litigated and decided. *Id.*

*Fratus v. Deland*, 49 F.3d 673, 676 (10th Cir. 1995) (sua sponte raising affirmative defense "reserved for those extraordinary instances when the claim's factual backdrop clearly beckons the defense."). Even if such a defense is raised *sua sponte* by the court, the court must provide the parties an opportunity to address its application. *See State of Nev. Employees Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1225 (9th Cir. 1990) (finding that a district court's *sua sponte* application of *res judicata* was in error as it "did not subject its res judicata decision to the rigors of the adversarial process . . . .").

In the present case, Defendants asserted only a very general *res judicata* defense in their answer. *See* Ans. at ¶ 42 (Dkt. # 29, filed Aug. 21, 2007). That defense was advanced only as to the state law claims in Defendants' summary judgment motion. Despite the narrowness of the defense as argued in the motion, the Report recommended that all of Plaintiff's claims be barred on *res judicata* grounds, which denied Plaintiff any reasonable opportunity to challenge application of the doctrine to his federal cause of action prior to entry of the Report.

Plaintiff objected to the application of the doctrine in his Objections. These arguments find at least some support in the law. For example, a reasonable argument can be made that Plaintiff's federal claim is not barred here because he was precluded from including it in his state law complaint at the time the complaint was filed. *See* 42 U.S.C. § 1997e(a) ("*No action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") (emphasis added).

Defendants have filed no opposition to Plaintiff's objection on this ground. Thus, even as of this date, Defendant has never argued that *res judicata* bars Plaintiff's federal claim.

The court makes no determination as to whether *res judicata* might, ultimately, bar Plaintiff's federal claims. However, this is not a matter whose "factual backdrop clearly beckons the defense [of *res judicata*]." *Fratus*, *supra*, 49 F.3d at 676. Therefore, the court declines to dismiss Plaintiff's Amended Complaint and proceeds to analyze Plaintiff's Eighth Amendment excessive force claim.

### IV. Eighth Amendment Analysis

The Report concludes that "the amount of force used to have [P]laintiff comply with orders was reasonable." Report at 10. The court declines to adopt that conclusion because the Report does not address the relevant factors as discussed below. Additionally, the Report makes an impermissible credibility determination of the evidence in the record against the non-moving party.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In the prison context, it "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). An inmate's Eighth Amendment claim involves a subjective component and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To prove the subjective component, Plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. The state of mind required in

14

excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).[9] "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko*, 535 F.3d. at 239 (internal quotations and citation omitted).

In *Whitley*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness":  (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."  *Whitley*, 475 U.S. at 321 (internal quotations omitted) (applying these factors in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the *Whitley* standard "to all allegations of excessive force").

The Fourth Circuit's decision in *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996), provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances.  These additional considerations inform the second and fourth prongs of the *Whitley* test, as "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for the sole purpose of infliction of pain."  *Id.* at 763.  While the use of mace on prisoners confined in their cells in not *per se* unconstitutional, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas

---

[9]The particular showings necessary to prove each component, however, "var[y] according to the nature of the alleged constitutional violation."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For example, to prove a claim of indifference to serious medical needs, a plaintiff must prove that officials were deliberately indifferent to his needs. *Farmer v. Brennan*, 511 U.S. 825 (1994).  This is a slightly different standard than the one at issue in this case.

used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Id.*

As to the objective component of the test, an injury is "sufficiently serious" if it rises above the level of *de minimis* harm. *Hudson*, 503 U.S. at 9-10 (rejecting the argument that "minor" injuries are not actionable). This rule aligns with "society's expectations" regarding the use of force: if an inmate can show the malevolence required to prove the subjective component, the actual injury suffered as a result of such malevolence need not be great for "contemporary standards of decency [to be] violated." *Id*. at 9. The Fourth Circuit has recognized that

> there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be of a sort repugnant to the conscience of mankind, and thus expressly outside the *de minimis* force exception, or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

*Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994) (internal citations and quotations omitted) (en banc), *cert. denied*, 513 U.S. 1114 (1995); *id*. at 1263 n.4 ("[T]he objective component [of the test] can be met by 'the pain itself,' even if an inmate has no 'enduring injury.'"). *See also Williams v. Benjamin*, 77 F.3d at 762 n.2 (noting that "courts should be wary of finding uses of force that inflict 'merely' pain but not injury to be *de minimis*, and therefore beyond requiring justification under the Eighth Amendment.").

**A. Excessive Force Analysis**

*1. Need for application of force*. Plaintiff does not deny that a disturbance occurred when inmates felt they were not given an adequate amount of food. However, Plaintiff avers that while he was one of the "complaining" inmates, the disturbance ceased once the inmates realized the RRT had assembled in B-Wing's sallyport.

16

Defendants do not directly counter Plaintiff's position. Instead, they focus on the reasonableness of the summoning of the RRT when the inmates' disruption did not cease upon demand. Defendants contend, through a copy of Hagan's affidavit, that the tumult did not cease when staff directed the inmates to stop. Hagan avers that "officers summoned the [RRT] to deal with [the disruptive behavior] before it became completely out of control," and that "officers complied with SCDC policy in summoning the [RRT]." Aff. of George Hagan at ¶5 (Dkt. #51-5, filed Dec. 19, 2007). However, the fact that the initial decision to assemble the RRT may have been reasonable does not answer the question whether it was necessary to deploy the RRT. Moreover, it does not address the reasonableness of the force employed by the members of the RRT once deployed, particularly as relates to the force used against Plaintiff by Defendant McKnight.

Assuming Plaintiff's version of events is true, as this court must at this stage of the proceedings, all disruptive behavior had ceased *prior to the entry of the RRT into B-Wing*. Therefore, taken in the light most favorable to Plaintiff, the application of force was unnecessary and McKnight acted wantonly in deploying chemical agents into Plaintiff's cell.

2. *Relationship between the need and the amount of force used.* Even if force was necessary to quell the disturbance, Plaintiff avers that the amount and type of chemical agent used were inappropriate and excessive. *See, e.g.*, Grievance Response & Am. Compl. at 8 (referring to the gas used as a type of gas to be used in "riots and open field areas . . . ."). Plaintiff's specific factual allegations support this conclusion which also finds some support in Hagan's Grievance Response.

*Williams v. Benjamin*, *supra*, directs that in considering this prong in prison "mace" cases, the court should consider provocation, the amount of gas used, and the purpose for which the gas is used. Plaintiff's averment that the disruptive behavior had ceased prior to the RRT's entry onto

17

B-Wing, if believed, is sufficient to show there was no justification for the use of gas. Plaintiff's contention there were two long bursts into his cell and Hagan's statement that "[t]he use of ISPRA within the confines of SMU was inappropriate" could support a finding that the use was excessive even if there was some provocation.[10]

    *3. Threat reasonably perceived by the responsible officials.* Plaintiff's version of the events, which this court must assume is true, indicates that the clamor had ceased by the time the RRT entered B-Wing. If true, it is unlikely that a threat could have been reasonably perceived by the responsible officials, including McKnight. Moreover, Plaintiff avers that he was not banging on his cell door at any time, and that he was sitting on his bed when the RRT approached his cell. Plaintiff contends he rose from his bed to see what was the matter, and without warning, was sprayed.

**B. Injury**

    To complete the analysis, the court assesses Plaintiff's injury. If Plaintiff can show the malevolence required to prove the subjective component, the actual injury suffered as a result of such malevolence need not be great, for "contemporary standards of decency [to be] violated." *Hudson*, 503 U.S. at 9.

    Plaintiff avers that he suffered "several injuries such as severe chest pain, aggravated headaches, loss of vision, increase[ed] high blood pressure, . . . and emotional anguish . . . ." Aff. at 5. Medical records, submitted by Defendants in support of their motion for summary judgment and by Plaintiff, are, at best, incomplete. It appears from notations in these records that Plaintiff has

---

    [10]There exists a factual dispute as to whether McKnight sprayed one short burst or two long bursts into Plaintiff's cell.

a history of complaining to and about medical staff.  The records (such as they are)[11] also reveal that

Plaintiff complained regarding chest pain and anxiety following the incident.[12]   Additionally,

Plaintiff claims that the gas was so strong that he wrapped himself in wet bed linens, got under his

bed, and prayed for his survival.  Dkt. # 11-1 at 10.

> As noted above, the Fourth Circuit has recognized that
>
> there may be highly unusual circumstances in which a particular application of force
> will cause relatively little, or perhaps no, enduring injury, but nonetheless will result
> in an impermissible infliction of pain.  In these circumstances, we believe that either
> the force used will be of a sort repugnant to the conscience of mankind, and thus
> expressly outside the *de minimis* force exception, or the pain itself will be such that
> it can properly be said to constitute more than *de minimis* injury.

*Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994) (internal citations and quotations omitted) (en

banc), *cert. denied*, 513 U.S. 1114 (1995); *id.* at 1263 n.4 ("[T]he objective component [of the test]

can be met by 'the pain itself,' even if an inmate has no 'enduring injury.'").  *See also Williams v.*

*Benjamin*, 77 F.3d at 762 n.2 (noting that "courts should be wary of finding uses of force that inflict

'merely' pain but not injury to be *de minimis*, and therefore beyond requiring justification under the

Eighth Amendment.").  Assessing Plaintiff's averments by this standard, they are sufficient to

support an Eighth Amendment violation.

Therefore, even if this court were to find that Plaintiff's pain was *de minimis*, McKnight's

actions, viewed in the light most favorable to Plaintiff, were "completely unjustified," *Irving v.*

---

[11]The copies of Plaintiff's medical records which were submitted by Defendants are not
complete, exceedingly difficult to read, and not submitted under a Records Custodian Affidavit, as
is required.

[12]In the portion of Plaintiff's medical records submitted by Defendants, there is an entry on
May 5, 2004 which reads:  "Late entry for 4-22-04.  I/M stated that he has been having chest pains
since that date."  Attachment 4 to Def. Mem. Supp. Summ. J., at 3 (Dkt. # 51-9, filed Dec. 19, 2007).

*Dormire*, 519 F.3d 441, 446 (8th Cir. 2008), and therefore qualify as being "repugnant to the conscience of mankind." For this reason as well, this court finds Plaintiff's averments sufficient to support an Eighth Amendment violation.

### C. Qualified Immunity

Defendant McKnight asserts that he is entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to Plaintiff, the facts alleged show Defendant McKnight's conduct violated a constitutional right. *Id*. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and Plaintiff cannot prevail. *Id*. If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id*. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*. "If the right was not clearly established in the 'specific context of the case'–that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'–then the law affords immunity from suit." *Id*. (quoting *Saucier*, 533 U.S. at 201).

If the material facts were undisputed, this court would apply clearly established law to

20

determine whether Defendant is entitled to qualified immunity. However, "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

Over a decade ago, the Fourth Circuit held that "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Williams*, 77 F.3d at 763 (internal quotations omitted) (emphasis added). Therefore, Plaintiff's right to be free from the excessive use of chemical munitions, whether it be pepper spray, mace, or riot gas, was clearly established at the time of this incident.

Taking the facts in the light most favorable to Plaintiff, the disturbance had ceased prior to the RRT's entry onto B-Wing, Plaintiff was not kicking his door at any point, Defendant McKnight deployed two bursts of chemical munitions directly onto Plaintiff's person, and Plaintiff suffered resulting injuries including severe chest pain, aggravated headaches, loss of vision, increased high blood pressure, and emotional anguish. The facts are sufficient to support a finding that Defendant McKnight used gas in a quantity greater than necessary and did so for the purpose of causing pain. Accordingly, taken in the light most favorable to Plaintiff, the facts show Defendant McKnight's conduct violated a clearly established constitutional right.

McKnight is not entitled to summary judgment on the issue of qualified immunity because he had "'fair warning' that [his] conduct was unconstitutional," *Ridpath v. Bd. of Governors*

*Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006).  Therefore, this court **denies** Defendant

McKnight's motion for summary judgment on grounds of qualified immunity.

### D.  Liability of Defendant Hagan Under § 1983

It is well settled that "supervisory officials may be held liable in certain circumstances for

the constitutional injuries inflicted by their subordinates."  *Baynard v. Malone*, 268 F.3d 228, 235

(4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)).  Such liability is not

based on ordinary principles of respondeat superior, but rather is premised on "a recognition that

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor

in the constitutional injuries they inflict on those committed to their care."  *Slakan v. Porter*, 737

F.2d 368, 372 (4th Cir. 1984). In order to establish supervisory liability under § 1983, a plaintiff

must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was
> engaged in conduct that posed a pervasive and unreasonable risk of constitutional
> injury to citizens like the plaintiff; (2) that the supervisor's response to that
> knowledge was so inadequate as to show deliberate indifference to or tacit
> authorization of the alleged offensive practices [ ]; and (3) that there was an
> affirmative causal link between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.  Plaintiff must show that the
> supervisor's corrective inaction amounts to deliberate indifference or "tacit
> authorization of the offensive acts [check quote]."

*Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980).  "A pervasive risk of harm (under this

principle) may not ordinarily be shown by pointing to a single incident or isolated incidents,"

*Withers v. Levine*, 615 F.2d 158, 161 (4th Cir. 1980), nor is a "(s)howing that individual officers

violated a person's constitutional rights on an isolated occasion . . . sufficient to raise an issue of fact

whether adequate training and procedures were provided."  *McClelland v. Facteau*, 610 F.2d 693,

697 (10th Cir. 1979).

Measured by these standards, the court finds there to be insufficient evidence to support a finding of supervisor liability as to Hagan, as there simply is no evidence that Hagan "had actual or constructive knowledge" that Defendant McKnight would deploy gas into Plaintiff's cell after the disturbance had ceased.   Therefore, Defendant Hagan is entitled to summary judgment.

### E.  Summary Judgment – Defendants Ozmint, Long, Dubose, Johnson, Williams, and Tyler

Plaintiff's allegations relating to Defendants Ozmint, Long, Dubose, Johnson, Williams, and Tyler do not survive Defendants' motion for summary judgment.  Plaintiff has made no showing that these Defendants participated in the application of excessive force.  Therefore, the court **grants** Defendants' Ozmint, Long, Dubose, Johnson, Williams, and Tyler's motion for summary judgment and dismisses these individuals from this matter with prejudice.

### V.  Motion to Compel

Plaintiff has filed a renewed motion to compel.  Plaintiff's previous motion to compel was denied by Magistrate Judge Hendricks on December 14, 2007.  *See* Dkt. # 45 (filed Dec. 14, 2007).

On August 23, 2007, Plaintiff sent Interrogatories, Requests to Produce, and Requests for Admissions to Defendants.  Defendants provided answers to Plaintiff's requests for admissions, but did not answer Plaintiff's interrogatories nor did they produce any material in response to Plaintiff's Requests to Produce.  The Defendants did not seek a protective order.

On December 14, 2007, the Magistrate Judge denied Plaintiff's motion to compel, finding that Plaintiff's discovery requests were "overbroad, overly burdensome, and sometimes irrelevant." Order at 2 (Dkt. # 45, filed Dec. 14, 2007).  The court agrees that several of Plaintiff's requests fit this description.  However, the court has reviewed Plaintiff Interrogatories and Requests to Produce in light of the fact that this case shall proceed to trial, and finds that certain of his requests are

23

relevant to the trial of this matter. Accordingly, this matter will be discussed further after the pretrial conference scheduled below.

## VI. Other Pending Motions

Plaintiff's motion to stay (Dkt. #54) is **moot**. Plaintiff's motion for Special Service on Complaint (Dkt. #56) is **denied**. Plaintiff's motion to amend (Dkt. #58) is **denied**. Plaintiff's motion for summary judgment (Dkt. #59) is **denied**.

## VII. Conclusion

This matter shall proceed to trial during this court's term of court beginning January 15, 2009. A pretrial conference shall be held at **2:00 p.m. on Wednesday, October 15, 2008**, Courtroom #2, Matthew J. Perry, Jr. United States Courthouse, 901 Richland Street, Columbia, South Carolina, 29201.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 25, 2008